UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CEDRIC UPSHAW

VERSUS

BOARD OF SUPERVISORS OF
SOUTHERN UNIVERSITY AND
AGRICULTURAL COLLEGE, ET AL

CIVIL ACTION

NO. 10-184-JJB-SCR

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on three separate Motions for Summary Judgment (docs. 34, 35 & 36). Plaintiff has filed oppositions (docs. 38 & 39) to which Defendants have filed replies (docs 40 & 41). This Court's jurisdiction exists pursuant to 28 U.S.C. § 1331. Oral argument is not necessary. For the reasons stated herein, the Court GRANTS Defendants' motions, in part, and DENIES Defendants' motions, in part.

### Background

**I. Facts**

This case arises out of the allegedly retaliatory termination of Plaintiff Cedric Upshaw ("Upshaw") for testifying as to acts of sexual harassment by members of the Southern University administration. The following facts are undisputed.

In 1999, Plaintiff was named as the University's Director of Alumni Affairs, the primary liaison between Southern University and its alumni. On June 22, 2007, Upshaw appeared in the case *Dr. Ralph Slaughter v. Board of*

1

*Supervisors, et al*, Civil Action No. 07-379-C-M2 ("the *Slaughter* action"). Upshaw testified that numerous female employees had complained to him of being sexually harassed by then-members of Southern University's Board of Supervisors ("the Board"). Upshaw also testified that he reported the complaints to Board-members including Tony Clayton ("Clayton"), then-System President Ralph Slaughter and Human Resources Director, Lester Pourciau. Thereafter, Clayton routinely expressed dissatisfaction to Upshaw for his decision to testify and his implication of Clayton (doc. 39, ex. A).

Despite the Board's alleged dissatisfaction with Upshaw, the Board promoted him to the positions of Director of the Southern University System Foundation ("the System Foundation") and Director of the Southern University Alumni Federation ("Alumni Federation") in 2008. As Director, Upshaw was officially employed by the Board rather than the System Foundation or Alumni Federation (doc. 35, exs. A, B & C; doc. 36, exs. A & B).[1]

In February 2009, Upshaw met with Clayton to discuss adding Tracie Abraham to the Alumni office (doc. 34, ex. A). Apparently, Clayton wished to secure the job for Abraham to prevent her from exposing Clayton's alleged sexual harassment (doc. 34, ex. A). According to Upshaw, when he informed

---

[1] Neither the System Foundation nor the Alumni Federation compensated or provided benefits directly to Upshaw, nor did either entity have the authority to terminate him (doc. 35, exs. A, B & C; doc. 36, exs. A & B). That said, the Board paid Upshaw an additional $11,000 annually on account of his status as Director (doc. 38, ex. A). The Alumni Federation was supposed to reimburse the University for this additional salary, but because of budget shortfalls, was unable to do so and provided "in-kind" services to the University instead (doc. 38, ex. F).

Clayton that he would not be comfortable adding Abraham due to the conflict, Clayton became angry and assaulted him (doc. 34, ex. A).

On March 26, 2009, Upshaw was called to a meeting with Board-members Patrick Magee ("Magee"), Patrick Jefferson, Brandon Dumas and Clayton at Ruth's Chris steakhouse in Baton Rouge and was questioned about the System Foundation's accounts (doc. 39, ex. A). Prior to the meeting, Upshaw had been accused of stealing funds from the Bayou Classic—a high-profile football game played annually between Southern and Grambling University. Plaintiff alleges that when he instructed the Board-members to direct their questions to the President and/or Chancellors, the parties angrily dissolved the meeting (doc. 39, ex. A).

Moreover, after a meeting wherein the Board voted to remove then-President Slaughter, Magee told Plaintiff that "[he was] not going to want to fuck with [Magee] anymore, and [that he] won't like [Magee]" (doc. 39, ex. A). In addition, Clayton had another employee inform Upshaw that he was to "keep [his] mouth shut" regarding Slaughter's termination, and that his job would only be secure if he did so (doc. 39, ex. A).

In May, June and July 2009, then-Board member and previously System-Foundation-President Walter Dumas ("Dumas") called unofficial meetings of the System Foundation, and eventually declared himself its "acting President," in contravention of the University's bylaws (doc. 39, ex. A). In June 2009, Upshaw sent Dumas outstanding invoices  totaling $138,000 and $18,000 for a football

3

suite that Dumas rented from 2006-2008 and a suite he rented at the Superdome for the 2008 Bayou Classic (doc. 39, ex. A).

On July 1, 2009, Dumas, Alumni Federation President Domoine Rutledge ("Rutledge") and Interim President Kassie Freeman ("Freeman") decided to terminate the positions of Director of External Affairs for the System Foundation and Executive Director of the Alumni Federation ostensibly as part of a reorganization plan to address budget shortfalls (doc. 39, ex. A). Later, Upshaw learned of the discussions between Dumas, Rutledge and Freeman and on July 28, 2009, he filed a charge of discrimination against the Board with the Equal Employment Opportunity Commission ("EEOC") (doc. 39, ex. A). On July 31, 2009, the Board rejected the reorganization plan, but nonetheless voted to terminate Plaintiff (doc. 39, ex. A). In August, the Board hired Ernie Hughes to serve as Director of the System Foundation and Alumni Federation at a salary of $110,000—$25,000 more than Upshaw had been receiving (doc. 39, ex. F).

## II. Procedu ral History

On March 19, 2010, Upshaw filed suit against Defendants the Board, Freeman, Clayton, Magee, Dumas, Rutledge, the System Foundation and the Alumni Federation. Upshaw asserts that Defendants (1) retaliated against him for disclosing and providing testimony during the *Slaughter* action; and (2) intentionally inflicted emotional distress upon him in violation of Louisiana tort law. In addition, Plaintiff asserts that Clayton, Freeman, Dumas, Bell, Rutledge, Magee, the System Foundation and the Alumni Federation (1) individually

4

deprived him of his rights under the First, Fifth and Fourteenth Amendments; and (2) conspired to deprive him of the aforementioned civil rights.

On May 31, 2011, all of the Defendants filed motions for summary judgment. The Board, Freeman, Clayton, Magee, Dumas and Bell (doc. 34) assert that Plaintiff cannot establish that (1) his claims are timely; (2) budgetary concerns were not simply a pretext for his termination; (3) they deprived him of federally protected rights under color of law or, alternatively, that they are not entitled to qualified immunity; or (4) they intentionally inflicted emotional distress upon him.

The System Foundation (doc. 35) and Alumni Federation (doc. 36) assert that Plaintiff's retaliation claims must be dismissed because (1) Plaintiff did not have an employment relationship with either entity; (2) both entities are exempt from LWA liability under the "non-profit educational institutions" exemption; (3) the facts alleged do not support a retaliation claim. They also assert that Plaintiff's Title VII claim must be dismissed because Plaintiff did not exhaust his administrative remedies prior to filing suit because he did not name either entity in his EEOC charge.

## Standard of Review

A motion for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

If the dispositive issue is one on which the nonmovant will bear the burden of proof at trial, the moving party satisfies its burden by pointing out that there is insufficient proof concerning an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the issue is one in which the movant bears the burden of proof at trial, the movant must demonstrate the absence of material facts and entitlement to judgment as a matter of law. *Id.* at 321. If the movant does so, in order to survive the motion for summary judgment, the nonmovant must show that a genuine issue of material fact remains for the factfinder to resolve. *Id.* at 323. In either case, the court must construe all facts in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "genuine issue of material fact" exists only when a reasonable fact-finder could return a verdict in the nonmovant's favor. *Id.* at 248.

## Discussion

### I. Title VII and La. R.S. § 23:967 Retaliation Claims

The Board, Freeman, Clayton, Magee, Dumas and Bell (collectively "the Board-Members") assert that (1) Plaintiff's retaliation claims must be dismissed as time-barred because the only protected activity in which Plaintiff engaged occurred in 2007; and (2) Plaintiff cannot show that the budget crisis was simply a pretext for his termination.

In opposition, Plaintiff asserts that (1) his claims are not time-barred because the acts constitute a continuing violation and; (2) that he has at least created a genuine issue of material fact as to the reason for his termination.

The System Foundation (doc. 35), Alumni Federation (doc. 36) and Rutledge assert that Plaintiff's retaliation claim must be dismissed because (1) they were not Plaintiff's "employers" and therefore cannot be held liable under Title VII or the LWA; (2) Plaintiff's EEOC charge did not name either entity; and (3) both entities are non-profit organizations which are exempt from liability under the LWA.

Plaintiff asserts that (1) the Alumni Federation "compensated" Plaintiff insofar as it was responsible for reimbursing the University for part of his salary; (2) there is a sufficient identity of interest between the entities and the party named in the EEOC charge; (3) the entities are sub-entities of the Southern University which is a public institution, and thus not exempt from liability under the LWA.

## A. Timeliness of Plaintiff's claims

The Board and the Board-Members assert that Plaintiff's retaliation claims must be dismissed as time-barred because the only protected activity in which Plaintiff engaged occurred in 2007.

Under Title VII, a plaintiff must file a charge with the EEOC within 180 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5. However, if the unlawful conduct constitutes a continuing violation, events occurring outside

7

the 180-day window may be included. Whether a violation is "continuing" depends on (1) the subject matter—whether the alleged acts are similar; (2) the frequency—whether the acts are frequent or isolated; and (3) the degree of permanence—whether the act is of such a permanent type that the employee should be alerted as to its seriousness. *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998). In all cases, courts focus on whether an average person would have been alerted that his rights needed to be protected.[2]

The Court finds that there are genuine issues of material fact. Plaintiff testified in the *Slaughter* action in 2007, and immediately thereafter began to suffer harassment by various members of the University's administration (doc. 39, ex. A). Plaintiff filed his EEOC charge in July 2009, immediately after being terminated, almost two years after he testified in the *Slaughter* action (doc. 39, ex. A). Under normal circumstances, any harassment not occurring within 180 days of July 2009 could not be cited to support Plaintiff's claim. 42 U.S.C. § 2000e-5. However, to the extent that Plaintiff successfully asserts that the

---

[2] The United States Court of Appeals for the Fifth Circuit has stated:

> The continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period. . . . The core idea of the continuing violations theory . . . is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights.

*Messer v. Meno*, 130 F.3d 130, 134-35 (5th Cir.1997) (internal citations omitted).

8

harassment constituted a "continuing violation," none of the alleged acts of harassment would be time-barred. *Huckabay*, 142 F.3d at 239. Up until his termination, members of the University's administration had threatened to, but had not yet taken any concrete action against him. The Court finds that questions of fact remain insofar as a reasonable fact-finder could conclude that Plaintiff should not have been on notice that his rights needed protecting prior being terminated.

## B. Employment Relationship

The System Foundation, Alumni Federation and Rutledge assert that Plaintiff's retaliation claims against them must be dismissed because they were not Plaintiff's "employers."

To establish a retaliation claim, a plaintiff must demonstrate that the defendant was his "employer," as only employers are liable under Title VII and the LWA. La. Rev. Stat. Ann. 23:967(A)(1) (stating that "[a]n *employer* shall not take reprisal against an employee") (emphasis added); *Watson v. Sears, Roebuck, Co.*, 742 F. Supp. 353, 357 (M.D. La. 1990). Under Title VII, "employer" is defined broadly and encompasses agents of the actual employer— that is, individuals who "participated in the decision-making process that forms the basis" of the complained-of conduct. *E.E.O.C. v. La. Network, Inc.*, 809 F. Supp. 1210, 1227 (M.D. La. 1992). Though the LWA does not define the term "employer," courts have adopted the definition of "employer" from the Louisiana Employment Discrimination Law ("LEDL"). *Langley v. Pinkerton's Inc.*, 220 F.

9

Supp. 2d 575, 580 (M.D. La. 2002). The LEDL defines an "employer" as an entity "*receiving services from an employee and, in return, giving compensation of any kind to an employee.*" La. Rev. Stat. Ann. § 23:302(2) (emphasis added). Though, the LEDL exempts from liability "employers" who are "private educational or religious institution[s] or any nonprofit corporation[s]," La. Rev. Stat. Ann. § 23:302(2)(b), courts have declined to extend this exception to claims against employers arising out of the LWA. *See, e.g., Knighten v. State Fair of La.*, 2006 WL 725678, at *1 (W.D. La. March 21, 2006).

The Court finds that there are no genuine issues of material fact. Plaintiff served as the Director of the System Foundation and Alumni Federation, rendering services to both entities (doc. 35, exs. A, B & C; doc. 36, exs. A & B). Neither the System Foundation nor the Alumni Federation compensated or provided benefits directly to Plaintiff, nor was either entity authorized to hire or terminate Plaintiff (doc. 35, exs. A, B & C; doc. 36, exs. A & B). However, the Alumni Federation did reimburse the Board $11,000 annually for the additional salary Plaintiff received due to his position as Director (doc. 35, exs. A, B & C; doc. 36, exs. A & B).

The Court also finds that the System Foundation and Rutledge are entitled to judgment as a matter of law, but that the Alumni Federation is not. Neither the System nor Rutledge were Plaintiff's "employer" under Title VII or the LWA. With regards to Plaintiff's Title VII claim, neither the System Foundation nor Rutledge were authorized to directly participate in the decision to terminate Plaintiff. *See*

10

*La. Network, Inc.*, 809 F. Supp. at 1227. And with regards to Plaintiff's LWA claim, neither the System Foundation nor Rutledge compensated Plaintiff. La. Rev. Stat. Ann. § 23:302(2).

However, the Court finds that a reasonable fact-finder could conclude that the Alumni Federation was Plaintiff's "employer." With regards to Plaintiff's Title VII claim, the Alumni Federation, through discussions with Freeman, was alleged to have some role in the decision to terminate Plaintiff. Moreover, with regards to Plaintiff's LWA claim, the Alumni Federation "receiv[ed] services from [Plaintiff]" insofar as he served as its director and compensated Plaintiff insofar as it essentially subsidized $11,000 of his salary.

### C. Scope of Plaintiff's EEOC charge

The System Foundation, Alumni Federation and Rutledge assert that Plaintiff's Title VII claims against them must be dismissed because they were not named in his EEOC charge. Because the Court has already determined that the System Foundation and Rutledge are entitled to summary judgment as to Plaintiff's retaliation claims, the Court will confine its discussion to the Alumni Federation.

The scope of the plaintiff's EEOC charge ultimately determines that scope of the his Title VII complaint. *Thomas v. Tex. Dept. of Criminal Justice*, 220 F.3d 389, 394 (5th Cir. 2000). That is, the plaintiff may not file suit for a violation of Title VII against a party who was not named in the EEOC charge. *Id.* However courts have developed an exception to this rule to protect plaintiffs who are

"unfamiliar with the technicalities of formal pleadings" and the "vagaries" of Title VII law. *Fassbender v. Treasure Chest Casino*, 2008 WL 170071, at *6 (E.D. La. 2008). A party not named in an EEOC charge may be sued if there is a clear identity of interests between the unnamed and named parties. *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir. 1988). *See, e.g., Jurek v. Williams WPC-I, Inc.*, 2009 WL 1748732 (S.D. Tex. June 17, 2009) (finding a sufficient identity of interest between two entities that formed an "integrated enterprise"). However, '[t]he leniency accorded a layman in drafting the EEOC charge should not be extended to an attorney." *Fassbender*, 2008 WL 170071, at *6. As such, courts have held that the exception does not apply—and an unnamed party may not be sued—if the plaintiff is an attorney or is represented by counsel. *Id.*

The Court finds that there are no genuine issues of material fact. At the time he testified in the *Slaughter* Action, Plaintiff was a practicing attorney (doc. 34, ex. A, p. 314).

The Court also finds that the Alumni Federation is entitled to judgment as a matter of law. Because Plaintiff is an attorney, he is presumed to understand the proper procedures for filing an EEOC charge and is not subject to the "identity-of-interests" exception. *Fassbender*, 2008 WL 170071, at *6. As such, Plaintiff's retaliation claims against the Alumni Federation must be dismissed.

### D. Substance of Plaintiff's Retaliation Claims

The Board and the Board-Members assert that Plaintiff's Title VII and LWA retaliation claims must be dismissed because Plaintiff cannot establish that

12

budget concerns were simply a pretext for his termination. Plaintiff asserts that whether or not he was terminated for budgetary reasons is in dispute.

To establish a retaliation claim under either Title VII or the LWA, the plaintiff must demonstrate that (1) the employee engaged in conduct protected by Title VII; (2) the employer subsequently took adverse employment action against the employee; and (3) the employer's decision to take adverse employment action was caused by the plaintiff's engaging in the protected conduct. *Thomas v. Tex. Dept. of Criminal Justice*, 220 F.3d 389, 394 (5th Cir. 2000). If the defendant cites some legitimate, non-discriminatory justification for the adverse employment action, the plaintiff bears the burden of demonstrating that the cited justification was simply a pretext. *Id.*

The Court finds that there are genuine issues of material fact which preclude summary judgment. Plaintiff has cited numerous instances in which members of the Board indicated that they wanted him removed as Director, and not simply for budgetary reasons. Moreover, after Plaintiff was removed, the Board filled the position with an individual whose annual salary was greater than Plaintiff's. As such, the Court finds that summary judgment as to the Board and Board-members is inappropriate.

## II. § 1983 and § 1985 Claims

Plaintiff asserts that the Board-Members violated 42 U.S.C. § 1983 by depriving him of his Title VII right to report sexual harassment in the work place and by tarnishing his reputation. In addition, Plaintiff also asserts that Defendants violated 42 U.S.C. § 1985 by conspiring to deprive him of these rights.

The Board-Members assert that they are entitled to qualified immunity because (1) their actions were objectively reasonable in light of their goal of reducing the University's budget; (2) they cannot be held liable simply by being voting members on the Board; (3) Dumas, Bell and Magee were not Board members in 2007 when the protected activity occurred; and (4) Clayton voted against the reorganization plan.

Claims under 42 U.S.C. § 1983 are analyzed using a two-prong approach. First, the plaintiff must establish that he was deprived of a clearly established, federally protected right by the defendants, and, second, must show that the defendant did so while acting under the color of state law. *Seigert v. Gilley*, 500 U.S. 226, 233 (1991). A right is clearly established if its contours are so clear that a reasonable official would understand that his conduct violates the plaintiff's federally-protected rights. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A private individual may act under color of law in certain circumstances, such as when a private person is involved in a conspiracy or participates in joint activity with state actors. *Slaughter v. Atkins*, 2010 WL 378128, at *5 (M.D. La. 2010,

14

Sept. 21, 2010) (rejecting non-Board member defendants' motion for summary judgment on the grounds that because they had reached an agreement with Board-members to terminate Plaintiff, that a jury could find that they acted under color of state law). Each of Plaintiff's claims are clearly established, federally protected rights, the contours of which are outlined below.

To establish a First Amendment violation the plaintiff must establish that (1) he suffered an adverse employment decision; (2) the speech involved a matter of public concern;[3] (3) the plaintiff's interest in commenting on the matter outweighed the defendants' interest in promoting efficiency; and (4) the speech motivated the defendants' adverse action. *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999). *See also McCoy,* 492 F.3d at 559 (defining "adverse employment action" as an "ultimate employment decision" akin to hiring and firing). Courts typically refer to the fourth element as the causation prong. *Harrison v. Yalobusha Cnty.*, 2010 WL 3937964, at *4 (N.D. Miss. 2010, Oct. 5, 2010).

To establish a § 1983 claim for damage to one's reputation, a plaintiff needs to do more than demonstrate that a state official inflicted a stigma on his reputation. A plaintiff must assert that the state official both inflicted a stigma on his reputation and infringed some other interest. *Blackburn v. City of Marshall,*

---

[3] Whether an employee's speech addresses a matter of public concern is determined by the content, form and context of the statement, relative to the whole record. *Connick v. Myers,* 461 U.S. 138, 147-48 (1983). Courts have found that harassment in the workplace is a matter of public concern. *See Id.* at 148 n. 8.

42 F.3d 925, 936 (5th Cir. 1995). To qualify, the stigma must consist of "concrete, false factual assertions" and the infringement must involve a state official seeking "to remove or significantly alter a life, liberty, or property interest" recognized and protected by federal law. *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995).

Second, if the defendant pleads qualified immunity, the court must ask whether the defendant's conduct was objectively reasonable in light of clearly established law at the time the challenged conduct occurred. *Anderson*, 483 U.S. at 638-39. The plaintiff bears the burden of demonstrating that the defense does not apply. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). *See also Alexander v. Brookhaven Sch. Dist.*, 2011 WL 2222190, at *3 (5th Cir. 2002) (stating that a plaintiff, in order to overcome defendant's claim of qualified immunity, had to identify facts and law showing that "[the defendant] retaliated against her because of her status as a witness in the District's civil case and that this violated the First Amendment in a way that was clearly established at the time).

Section 1985 confers a right of action against persons who conspire to deprive individuals of their federally protected rights. 42 U.S.C. § 1985. To establish such a claim, the plaintiff must demonstrate that (1) two or more persons conspired (2) to directly, or indirectly, deprive him of the equal protection of the laws or equal privileges and immunities under the laws; and (3) one or more of the conspirators committed some act in furtherance of the conspiracy;

whereby (4) plaintiff was injured in his person or property or deprived of having and exercising some federally protected right or privilege; and (5) the conspirators' conduct is motivated by class-based animus . Am. Jur. 2d Civil Rights § 187 (2011); *Green v. State Bar of Tex.*, 27 F.3d 1083, 1089 (5th Cir. 1994) (stating that § 1985 requires class-based animus to prevent § 1983 from becoming a general federal tort law). In addition, not all articulable classes qualify for relief under § 1985, but only those based on inherited or immutable characteristics or upon political beliefs or associations. *McLean v. Int'l Harvester Co.*, 817 F.2d 1214, 1218 (5th Cir.1987).

The Court finds that there are genuine issues of material fact. Plaintiff has provided facts to establish that the Board took adverse employment action against him—he was terminated—, that the speech involved a matter of public concern—it involved allegations of sexual harassment by high-ranking officials at Southern University—, and that Plaintiff's interest in commenting outweighed the University's interest in "efficiency" (doc. 36, ex. A). However, genuine issues of material fact remain as to whether the Board terminated Upshaw due to his testimony or for budgetary reasons, as they allege. Moreover, genuine issues of material fact remain as to whether Dumas, Bell and Magee, who were not on the Board at the time, nonetheless acted under the color of law through an agreement with acting Board members or whether Clayton may have helped cause Plaintiff's termination despite that he voted against the initial reorganization plan. Finally, to the extent that Plaintiff can prove his § 1983

17

claim, Defendants likely would not be entitled to qualified immunity since it would not be objectively reasonable to terminate an employee for testifying in a public proceeding. As such, Plaintiff's §§ 1983 and 1985 claims should not be dismissed on summary judgment.

### III. Intentional Infliction of Emotional Distress

Plaintiff asserts that the Board-Members are liable to him for intentional infliction of emotional distress. The Board-Members assert that Plaintiff has not established any of the elements of his emotional distress claim.

Under Louisiana law, to establish a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show that (1) the defendant's conduct was extreme and outrageous; (2) he suffered severe emotional distress; (3) the defendant intended to cause severe emotional distress or the plaintiff's severe emotional distress was substantially certain to result from the defendant's conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).

In Louisiana, courts have recognized IIED claims arising out of employment in two situations: repeated acts of harassment and wrongful termination. *See Fletcher v. Wendelta, Inc.*, 999 So. 2d 1223, 1230 (La. Ct. App. 2d Cir. 2009); *Stevenson v. Lavalco, Inc.*, 669 So. 2d 608, 611 (La. Ct. App. 2d Cir. 1996). To establish an IIED claim based upon harassment, a plaintiff must demonstrate a "pattern of deliberate, repeated harassment over a period of time." *Fletcher*, 999 So. 2d at 1230. To establish an IIED claim based on wrongful

termination, the plaintiff must independently establish a claim for wrongful termination. *Stevenson*, 669 So. 2d at 611.

The Court finds that there are genuine issues of material fact. A reasonable fact-finder could conclude that Defendants' conduct was sufficiently extreme and outrageous.[4] Each Defendant allegedly took some role in harassing Plaintiff or in the decision to terminate him. A reasonable fact-finder could conclude that threatening to or actually depriving an individual of his livelihood for testifying in a sexual harassment trial is extreme and outrageous conduct. A reasonable fact-finder could also conclude that Plaintiff suffered extreme emotional distress. Since being terminated, Plaintiff states that his reputation in the community has suffered and that he has been placed on medications for high blood pressure and stress and has met with his father, a minister, regularly in order to cope (doc. 36, A.). As such, Plaintiff's IIED claims should not be dismissed on summary judgment.

## IV. Abuse of Rights

Plaintiff asserts that Clayton, Freeman, Bell, Dumas, Rutledge and Magee abused their right as Board-members to terminate University employees by terminating him for an improper purpose. Defendants, however, assert that their

---

[4] For instance, Plaintiff alleges that Clayton continuously harassed him for testifying in the *Slaughter* action, participated in the unauthorized meeting at Ruth's Chris and attempted to force Plaintiff to hire Tracie Abraham to prevent her from implicating Clayton in sexual harassment, and then assaulted Plaintiff when he refused to do so (doc. 36, ex. A). Plaintiff alleges that Dumas participated in the meeting at Ruth's Chris and, along with Freeman and Rutledge proposed terminating Plaintiff to the Board. Finally, Plaintiff alleges that Magee participated in the meeting at Ruth's Chris and made intimidating remarks to Plaintiff (doc. 36, ex. A).

decision was motivated by budgetary concerns and that Plaintiff has provided no evidence demonstrating otherwise.

Under Louisiana law, the abuse of rights doctrine exists to prevent an individual from exercising a right to the detriment of another. *Oliver v. Cent. Bank*, 658 So. 2d 1316, 1321 (La. Ct. App. 2d Cir. 1995). However, because the doctrine prohibits one from exercising a right, the doctrine is invoked sparingly. *Id.* To state a claim for abuse of rights, a plaintiff must show that (1) defendant exercised a right for the purpose or with the predominate motive of harming the plaintiff; (2) the defendant lacked a serious and legitimate interest in exercising the right; (3) the defendant used the right in violation of moral rules, good faith or elementary fairness; or (4) defendant exercised the right for a purpose other than the one for which it was granted. *Id.*

The Court finds that there are genuine issues of material fact. According to Plaintiff, he was subjected to repeated acts of harassment at the hands of various Board-members (doc. 36, ex. A). A reasonable fact-finder could conclude that Defendants' predominate motive in terminating Plaintiff was his decision to testify in the *Slaughter* action, rather than budgetary concerns. Or, a reasonable fact-finder might conclude that the Board terminated Plaintiff in violation of "moral rules, good faith or elementary fairness" or that the Board exercised its right to terminate employees for a purpose other than the one for which it was granted. Each of these scenarios would be grounds for finding that

Defendants abused their rights.  *Oliver*, 658 So. 2d at 1321.  As such, dismissal on summary judgment is inappropriate.

## Conclusion

Accordingly, the Court hereby DENIES Defendants' Motion (doc. 34) for Summary Judgment as to Plaintiff's retaliation, § 1983, § 1985 and intentional infliction of emotional distress claims against the Board, Freeman, Clayton, Magee, Dumas and Bell.  In addition, the Court hereby GRANTS Defendants' Motions (doc. 35 & 36) for Summary Judgment and Plaintiff's retaliation claims against the Alumni Federation and the System Foundation are dismissed.

Signed in Baton Rouge, LA this 18th day of July, 2011.

JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA